## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **WANDA DAVIS,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:22-00384-N** |
| | ) | |
| **KILOLO KIJAKAZI,** *Acting* | ) | |
| *Commissioner of Social Security*, | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Wanda Davis brought this action under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Defendant Commissioner of Social Security denying her application for a period of disability and disability insurance benefits (collectively, "DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*[1] Upon due consideration of the parties' briefs (Docs. 19, 20, 21) and those portions of the certified transcript of the administrative record (Doc. 14) relevant to the issues raised, the Court finds that the Commissioner's final decision is due to be **AFFIRMED**.[2]

---

[1] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) (citing 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III)).

[2]     With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 10, 11).

    With the Court's agreement, the parties waived the opportunity to present oral argument. (*See* Docs. 23, 24).

## I.    *Procedural Background*

Davis protectively filed the subject DIB application with the Social Security Administration ("SSA") on February 10, 2021. After the application was denied initially, and again on reconsideration, Davis requested, and on March 10, 2022, received, a hearing on her application with an Administrative Law Judge ("ALJ") of the SSA's Office of Hearings Operations. On March 25, 2022, the ALJ issued an unfavorable decision on Davis's application, finding her not entitled to benefits. (*See* Doc. 14, PageID.58-75).

The Commissioner's decision on Davis's application became final when the Appeals Council for the SSA's Office of Appellate Operations denied her request for review of the ALJ's unfavorable decision on September 8, 2022. (*See id.*, PageID.51-56). Davis subsequently brought this action under § 405(g) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.    *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the

Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation omitted).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. [293], [301], 135 S. Ct. 808, 815, 190 L. Ed. 2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is "more than a mere scintilla." *Ibid.*; see, *e.g.*, [*Richardson v.*] *Perales*, 402 U.S. [389,] 401, 91 S. Ct. 1420[, 28 L. Ed. 2d 842 (1971)] (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, 587 U.S. --, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

In reviewing the Commissioner's factual findings, a court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[3]

---

[3] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[4]

---

[4] However, the "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S. Ct. 1696, 173 L. Ed. 2d 532 (2009). *See also Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. Unit A Sept. 8, 1981) (per curiam) ("It is the claimant who bears the weighty burden of establishing the existence of a disability within the meaning of the Act, and therefore the appellant has the burden of showing that the Secretary's decision is not supported by substantial evidence in the record." (citation omitted)); *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) (unpublished) ("Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion."). "[D]istrict court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court,

we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue')."); *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per curiam) (unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility … However, Figuera did not adequately raise this issue in her brief before the district court. She raised the issue only summarily, without any citations to the record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority'). As a result, we do not address the sufficiency of the ALJ's credibility finding."); *Turner v. Social Security Administration, Commissioner*, No. 21-13590, 2022 WL 842188, at *2 (11th Cir. Mar. 22, 2022) (per curiam) (unpublished) ("An appellant forfeits an argument by 'mak[ing] only passing references to it or rais[ing] it in a perfunctory manner without supporting arguments and authority.' *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). In her briefing, Turner states that the Appeals Council failed to request her records or obtain a consultative evaluation. But she cites no authorities or makes any other argument tending to establish that it had a duty to do so. She has therefore failed to adequately develop this argument, and it is forfeited."); *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 899 (11th Cir. 2022) *(*"Harner's references to the substantiality of the evidence, the administrative law judge's analysis of her fibromyalgia, and the administrative judge's consideration of her

The "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) ... As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "

---

daily activities as '[d]iminish[ing] the [p]ersuasiveness of [h]er [a]llegations' consist only of block quotations from and cursory mentions of various decisions of this and other courts. Harner failed to refer to the facts of her case or to provide any meaningful explanation as to how the decisions she cites apply to her claim, her arguments are forfeited.")*Grant v. Soc. Sec. Admin., Comm'r*, No. 21-12927, 2022 WL 3867559, at *2 (11th Cir. Aug. 30, 2022) (per curiam) (unpublished) (appellant forfeited most challenges where "brief consist[ed] largely of block quotations with only passing or conclusory references to how the law and the relevant facts relate"); *Walker v. Comm'r, Soc. Sec. Admin.*, 835 F. App'x 538, 542 (11th Cir. 2020) (per curiam) (unpublished ("As the government notes, Walker's argument on this issue consists of lengthy block quotes to caselaw without any attempt to apply the law to the facts of this case. He has thus abandoned the issue by failing to develop his arguments.").

'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). Moreover, an ALJ's decision must "state with at least some measure of clarity the grounds for [the] decision." *Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. A court cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as "[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Rather, "an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974) (quotation omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as

adopted by the Appeals Council."); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 921 (11th Cir. 2019) (per curiam) (unpublished)[5] ("Agency actions … must be upheld on the same bases articulated in the agency's order." (citing *Texaco Inc.,* 417 U.S. at 397, and *Newton*, 209 F.3d at 455)).

Relevant here, eligibility for DIB requires a showing that a claimant is "under a disability[,]" 42 U.S.C. § 423(a)(1)(E), meaning that the claimant is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[6]

---

[5] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[6] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established

that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

If a court determines that the Commissioner reached a decision "by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such circumstances [the court] cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Nevertheless, " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' " *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation and brackets omitted)).

When the ALJ denies benefits and the Appeals Council denies review of that decision, a court "review[s] the ALJ's decision as the Commissioner's final

decision[,]" *Doughty*, 245 F.3d at 1278, and the Court "will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.

### III.   *Summary of the ALJ's Decision*

At Step One, the ALJ found that Davis met the applicable insured status requirements through December 31, 2025, and that she had not engaged in substantial gainful activity since the alleged disability onset date of November 14, 2020.[7] (Doc. 14, PageID.63). At Step Two, the ALJ found that Davis had the following severe impairments: lumbar disc desiccation, bulging disc, right foraminal narrowing, and hypertension.[8] (Doc. 14, PageID.63-65). At Step Three,[9] the ALJ

---

[7] "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured." *Moore*, 405 F.3d at 1211 (citing 42 U.S.C. § 423(a)(1)(A) (2005)).

[8] "The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. *See also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (per curiam) (Step Two "is a 'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected.' " (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). "[A]n 'impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.' A claimant's burden to establish a severe impairment at step two is only 'mild.' " *Schink*, 935 F.3d at 1265 (citation omitted) (quoting *McDaniel*, 800 F.2d at 1031).

found that Davis did not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (Doc. 14, PageID.65).

At Step Four,[10] the ALJ determined that Davis had the residual functional

---

[9] Step Three "identif[ies] those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Yuckert*, 482 U.S. at 153. *See also Sullivan v. Zebley*, 493 U.S. 521, 525, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) ("In the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work … If the claimant's impairment matches or is 'equal' to one of the listed impairments, he qualifies for benefits without further inquiry."); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997) ("If the claimant's condition meets or equals the level of severity of a listed impairment, the claimant at this point is conclusively presumed to be disabled based on his or her medical condition.").

[10] At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That

capacity (RFC) "to perform light work as defined in 20 CFR 404.1567(b)[11] except [she can] occasionally lift and carry 20 pounds; frequently lift and carry 10 pounds; sit 6 hours, stand 6 hours, and walk 6 hours; frequently climb stairs and ramps, balance, kneel, and crouch; and occasionally climb ladders, stoop, and crawl." (Doc. 14, PageID.65-70). Based on the RFC and the testimony of a vocational expert,[12] the

---

is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted). "[A]n ALJ's RFC assessment is an administrative finding based on all the relevant evidence, including both medical and nonmedical evidence." *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1065 (11th Cir. 2021).

[11] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. The criteria for "light" work are as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[12] "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational

ALJ found that Davis was able to perform past relevant work as a security guard. (Doc. 14, PageID.70). Thus, the ALJ found that Davis was not "disabled" under the Social Security Act from the alleged disability onset date through the date of the ALJ's decision. (*Id.*, PageID.70-71).

## IV.   *Analysis*

### a.   RFC

Davis first claims that the RFC findings that she can lift and carry 20 pounds occasionally and 10 pounds frequently, and that she can stand and walk 6 hours a day, is based "on a misrepresentation of the evidence." No reversible error has been shown.

Relevant here, Davis claimed disability based on impairments resulting from an on-the-job injury she suffered on October 23, 2020, while lifting copper tubing. The record includes treatment notes for that injury from several health care providers documenting a number of examinations and procedures spanning October 2020 to May 2021. In the notes for many of these visits, the examiner set out certain restrictions under which Davis could return to work. The ALJ addressed those restrictions as follows:

> The claimant's primary care providers gave the claimant temporary
> work restrictions including no lifting/pushing/pulling over 10 pounds,
> no working over 8 hours a day, no jumping, climbing, reaching
> overhead, bending, or squatting, jumping, or climbing; and then said
> she could return to work at a seated position… (Ex. 3F/39, 40, 44, 47,

---

expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

52, 56, 57, 60). These opinions are not persuasive because they are not permanent and they have cleared the claimant to return to work with no limitations as of April 21, 2021. (Ex. 7F/5).

The opinions of Dr. Petersen and Dr. West that her on the job back injury warranted no permanent restrictions was persuasive. (Ex. 6F/13, 16). The opinions are consistent with the other opinions of record that provided temporary restrictions and eventually released the claimant to return to work with no restrictions.

(Doc. 14, PageID.70).

Davis argues the ALJ's description of the temporary work restrictions is erroneous because "on April 21, 2021, the office note stated she was not to lift over ten pounds[,]" (Doc. 20, PageID.523) (citing Doc. 14, PageID.493)), and "[t]here was no indication that the restrictions were not permanent." (*Id.*). Davis further argues that "[t]he evidence does not show [she] is able to be on her feet 'upwards of six hours in an eight-hour day[]"—which the vocational expert testified was necessary for her to perform the job of security guard—because "[a]ll of the restrictions provided by the treating sources limit Ms. Davis to work in a seated position or with a maximum lifting of ten pounds." (*Id.*, PageID.524 (alteration added)).

As to the first assertion, Davis misstates the record. While the treatment note for the April 20, 2021 visit—prepared and electronically signed by Certified Registered Nurse Practitioner Matthew Tyler that same day—states that Davis should "[r]est [her] back," with "no lifting more than 10 pounds" (Doc. 14, PageID.493), the return-to-work letter prepared and signed by the examiner that same day states that Davis was "[a]ble to return to work without restrictions on 04/21/21[,]" the next day (*id.*, PageID.494 (emphasis added)). The ALJ clearly picked

up on this one-day distinction, specifically noting that the examiner "completed a form on April 20, 2021 stating that [Davis] was able to return to work without restrictions on April 21, 2021" (*id.*, PageID.69)—thus complying with his duty "to resolve material conflicts in the testimony…" *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) (per curiam).

Moreover, the ALJ's resolution of that conflict, and his overall determination that the sitting and lifting limitations imposed by Davis's medical providers were temporary, are reasonable and supported by substantial evidence, viewing the record as a whole. The ALJ's decision chronologically documents the various return-to-work restrictions imposed over the course of Davis's treatment for her work injury. On October 27, 2020, CRNP Tyler—who examined Davis in collaboration with Huey Kidd, D.O.—completed a form return-to-work letter restricting her to no lifting, pushing, or pulling over 10 pounds, no working over 8 hours a day, and no jumping or climbing. (Doc. 14, PageID.444). On November 3, 2020, Dr. Kidd, using the same form, imposed the same restrictions and added no overhead reaching, bending, or squatting. (*Id.*, PageID.440). However, a second form letter completed by Dr. Kidd that same day stated that Davis was "[a]ble to return to work without restrictions 11-4-20…" (*Id.*, PageID.441). On November 10, 2020, Dr. Kidd completed another form that omitted all prior restrictions but restricting Davis to working in "a seated position." (*Id.*, PageID.436). CRNP Tyler imposed the restriction a week later, on November 17 (*id.*, PageID.431), as did another nurse practitioner in the same office, Kevin Garris, on December 10 and 15, 2020 (*id.*,

PageID.423-424, 428). At the December 15 visit, CRNP Garris also completed two return-to-work form letters, with one stating generally that Davis "may return to work at a seated position[,]" while the other specified that Davis "can return at a seated position 12-16-20…" (*Id.*).

On December 22, 2020, Davis went to neurosurgeon Bendt Petersen, M.D., who found that she could return to "work light duty as of 12-22-2020" except she should not lift over 10 pounds and should have "no repetitive bending or twisting at the waist…" (*Id.*, PageID.347). Dr. Petersen also wrote at that visit that he would "maintain her current work status for now, but fully anticipate[d] a return to work without restrictions." (Id., PageID.455). The ALJ interpreted a physical therapist's note from January 8, 2021, as stating that "therapy was expected to restore ability in 4 weeks. (*Id.*, PageID.69, 343).[13] On January 25, 2021, Dr. Petersen stated that Davis was "available for light duty at this point[,]" with no other specific restrictions. (*Id.*, PageID.452). On February 20, 2021, CRNP Tyler wrote that Davis should "[r]est [her] back," with "no lifting more than 10 pounds." (*Id.*, PageID.417).

On April 19, 2021, Davis began seeing orthopedist James L. West, M.D., whose notes from that visit state, in relevant part: "The patient has been rated by Dr. Petersen on February 22, 2021, where is applied no impairment and stated she did not have restrictions. I agree with his rating." (*Id.*, PageID.480).[14] Dr. West also

---

[13] Davis does not challenge the ALJ's interpretation of the physical therapist's note, and the undersigned finds that interpretation reasonable.

[14] The parties agree that no such rating by Dr. Petersen appears in his February 22, 2021 treatment note (Doc. 14, PageID.451) or elsewhere in the record. However, to

stated that he would continue seeing her "on an as-needed basis." (Doc. 14, PageID.468). On April 20, 2021, CRNP Tyler stated that Davis should "rest [her] back," with "no lift more than 10 pounds[,]" but also that she could return to work without restrictions the following day. (*Id.*, PageID.493-494). CRNP Tyler also wrote that Davis should continue taking medication as ordered and come in for a follow-up if the "pain persists and doesn't seem to improve over the next week…" (*Id.*, PageID.493). A week later, at an April 28, 2021 visit, Dr. Trent administered an epidural injection, and provided "pain management post-op instructions" stating that Davis "may return to work unless [her] referring physician [Dr. West] recommends otherwise." (*Id.*, PageID.509). The latest treatment notes in the record are from May 10 and 24, 2021, in which Dr. West stated that Davis tolerated myofascial injections for pain well and that he would continue seeking her "as needed." (*Id.*, PageID.465-466). Dr. West's May 2021 notes did not impose any return-to-work restrictions. In all, then, Davis's treatment history for her October 23, 2020 work injury appears to have lasted about 7 months.

Considering Davis's treatment history as a whole, the ALJ's determination that her work restrictions to lifting no more than 10 pounds and staying seated were temporary is reasonable and supported by substantial evidence, even if the record could also support a contrary conclusion. *See Barnes*, 932 F.2d at 1358 ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates

---

the extent the ALJ credited this statement, it is at most harmless error in light of the other substantial evidence supporting the ALJ's RFC determination.

against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."). Both restrictions tended to come and go over the course of Davis's treatment for her work-related injury, and the last medical professional to address work restrictions, CRNP Tyler, clearly stated that Davis could return to work with no restrictions beginning April 21, 2021. While true that Tyler also recommended she lift no more than 10 pounds as of April 20, 2021, the two restrictions are not irreconcilable. For instance, a reasonable fact-finder could conclude that Tyler intended the lifting restrictions to be part of his directive that Davis rest her back that day, so that she could return to work without restrictions the following day.[15] Additionally, none of the few treatment from after April 21, 2021, impose any further work restrictions. The fact that Davis does not appear to have sought any additional treatment for her work-related injury after May 2021—approximately three months after she filed the present DIB application, and approximately 10 months before the ALJ hearing—and Dr. Petersen's opinion that he "fully anticipate[d] a return to work without restrictions[,]" further bolsters the ALJ's conclusion that her work restrictions were temporary and therefore not disabling. Finally, as the ALJ found, the RFC is supported by the opinions of two state agency reviewing physicians rendered May 5 and July 30, 2021, based on their respective review of the record. (*See* Doc. 14, PageID.70).

---

[15] The fact that Dr. Kidd had previously done something similar—imposing work-related restrictions on November 3, 2020, but also stating that Davis could return to work without restrictions the following day—reasonably indicates that CRNP Tyler's imposing work restrictions on April 20, 2021, but not the following day, was intentional rather than a clerical mistake.

### b.    Subjective Complaints

Davis's second claim of reversible error is that the ALJ did not adequately justify discrediting her subjective testimony regarding the limiting effects of her pain and other symptoms. The undersigned disagrees.

The Commissioner must "apply a three part 'pain standard' when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam). A claimant's "statements about...pain or other symptoms will not alone establish [disability]." 20 C.F.R. § 404.1529(a). Instead, "[t]here must be objective medical evidence from an acceptable medical source that shows [the claimant] ha[s] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence of...pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that [the claimant is] disabled." *Id.*

"In evaluating the intensity and persistence of...symptoms, including pain, [the Commissioner] will consider all of the available evidence, including [the claimant's] medical history, the medical signs and laboratory findings, and statements about how [the claimant's] symptoms affect [him or her]. [The Commissioner] will then determine the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can

reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how…symptoms affect [the] ability to work." *Id. See also* 20 C.F.R. § 404.1529(c)(1) ("When the medical signs or laboratory findings show that you have a medically determinable impairment(s) that could reasonably be expected to produce your symptoms, such as pain, we must then evaluate the intensity and persistence of your symptoms so that we can determine how your symptoms limit your capacity for work. In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you. We also consider…medical opinions…"). It is well established that "the claimant bears the burden of proving that he is disabled, and, consequently,…is responsible for producing evidence in support of his claim." *Ellison*, 355 F.3d at 1276.

However, the Commissioner cannot reject a claimant's testimony regarding the intensity and persistence of symptoms based *solely* on a lack of corroborating objective medical evidence. *See* 20 C.F.R. § 404.1529(c)(2)-(3) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements…Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms."); *Todd v. Heckler*, 736 F.2d 641, 642 (11th Cir. 1984) (per curiam) ("In this circuit the

ALJ must recognize that pain alone can be disabling, even when there is no objective medical evidence to support the claimant's testimony about pain. The ALJ improperly required objective medical evidence to support Todd's claim of disabling pain." (citation omitted)); *Snyder v. Comm'r of Soc. Sec.*, 330 F. App'x 843, 848 (11th Cir. 2009) (per curiam) (unpublished) ("[T]he ALJ cannot discredit Snyder's testimony as to the intensity or persistence of her pain and fatigue solely based on the lack of objective medical evidence."). Other "[f]actors relevant to [a claimant's] symptoms, such as pain, which [the Commissioner] will consider include: (i) [the claimant's] daily activities; (ii) The location, duration, frequency, and intensity of…pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate…pain or other symptoms; (v) Treatment, other than medication, [the claimant] receive[s] or have received for relief of…pain or other symptoms; (vi) Any measures [the claimant] use[s] or ha[s] used to relieve… pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. § 404.1529(c)(3).

In considering the claimant's subjective statements about the intensity, persistence, and limiting effects of symptoms, the Commissioner "will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the] statements and the rest of the evidence, including

[the claimant's] history, the signs and laboratory findings, and statements by…medical sources or other persons about how [the claimant's] symptoms affect [the claimant]. [The claimant's] symptoms, including pain, will be determined to diminish [the claimant's] capacity for basic work activities to the extent that [the] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* § 404.1529(c)(4).

The ALJ discussed Davis's subjective complaints as follows:

She indicated she experienced a work injury within the last few years and recently had to stop working because of physical problems. Her range of daily activities included driving, routine housework, and food preparation activities, although she did point out that engaging in certain routine activities is more difficult now mainly due to her various physical challenges. She reported having positive social relationships…

The claimant alleges her ability to work is limited by spinal injury and arthritis in the shoulder and knee. She reported coccygeal pain causing problems sitting since April 28, 2021, and bone/knee pain as of May 14, 2021. (Ex. 2E and 7E). She reported Mobic, Tizanidine, and Tramadol make her sleepy, cause dry mouth, sweating, headache and hoarseness. (Ex. 4E). These side effects do not consistently appear in the treatment records. The claimant also later reported no side effects to Tramadol and other medications. (Ex. 7E).

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because they are inconsistent with her medical treatment history, physical exam findings, imaging studies, and her activities of daily living. The claimant has some treatment for back pain, but surgery has not been recommended. She has had minimal abnormal exam findings but tenderness and some pain with range of motion has been noted. Her activities of daily living indicate higher functioning than alleged. She lives alone, has a driver's license, can do chores, can make a simple meal, and watches television. (Ex. 5F). The claimant has been released to return to work with no restrictions.

(Doc. 14, PageID.64, 66).

Davis complains that the ALJ improperly discredited her subjective testimony based on Davis's "participation in everyday activities of short duration, such as housework…" *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997). However, even if participation "in daily activities for short durations does not necessarily disqualify the claimant from disability, that does not mean it is improper for the ALJ to consider a claimant's daily activities at all." *Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 663 (11th Cir. 2010) (per curiam) (unpublished) (citation omitted). *See also* 20 C.F.R. § 404.1529(c)(3)(i) (listing a claimant's "daily activities" as relevant to evaluating pain and other symptoms). Moreover, the ALJ did not discredit Davis's subjective complaints based solely on that factor. The ALJ noted that instances of medication side effects in the record, as well as Davis's statements regarding claimed side effects, were inconsistent—a finding Davis does not challenge. *See* 20 C.F.R. § 404.1529(c)(3)(iv) (listing "[t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms" as relevant to evaluating

symptoms). Also unchallenged are the ALJ's citation to Davis's conservative history of treatment, without any surgery being recommended, *see id.* § 404.1529(c)(3)(v) (listing "[t]reatment, other than medication, you receive or have received for relief of your pain or other symptoms[,]" as relevant to evaluating symptoms),[16] and the "minimal abnormal exam findings" in the objective medical evidence, *see id.* § 404.1529(c)(2). The ALJ also found that Davis's being released to work without restrictions as of April 21, 2021—a finding that was reasonable and supported by substantial evidence, *see supra*—further undermined Davis's credibility regarding the limiting effects of her pain and other symptoms. Considering these reasons, the ALJ did not err in finding Davis's subjective complaints as to the limiting effects of her symptoms not fully credible. [17]

No reversible error having been shown, the Court finds that the Commissioner's final decision denying Davis's application for benefits is therefore due to be **AFFIRMED**.

## V.   *Conclusion*

In accordance with the foregoing analysis, the Commissioner's final decision denying Davis's February 10, 2021 DIB application is **AFFIRMED** under sentence

---

[16] As was noted previously, there is no record evidence of Davis seeking any further medical treatment since May 2021.

[17] As the Commissioner correctly argues, Davis's claim that the ALJ should have found her disabled under the SSA's Medical Vocational Guidelines is without merit because the ALJ properly found at Step Four that she could perform past work, and therefore did not need to proceed to Step Five and determine whether Davis could adjust to other work. *See Phillips*, 357 F.3d at 1239 (explaining that the Medical Vocational Guidelines are one way "the ALJ may determine whether the claimant has the ability to adjust to <u>other</u> work in the national economy" (emphasis added)).

four of 42 U.S.C. § 405(g).

Judgment in accordance with this order shall hereafter be set out by separate document, in accordance with Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the **19th** day of **October 2023**.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**